IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| MARIO OLIEA, | ) |
| Petitioner, | ) |
| v. | ) No. 17-cv-3007 |
| STEVE KALLIS, WARDEN, | ) |
| Respondent. | ) |

## REPORT AND RECOMMENTATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Petitioner Mario Oliea has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to secure a resentencing for his 2007 drug trafficking conviction in this Court in Case No. 07-cr-30033. <u>Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (d/e 1) (Petition)</u>. The matter is before this Court for a Report and Recommendation. For the reasons set forth below, the Petition should be DENIED.

## STATEMENT OF FACTS

On April 4, 2007, a grand jury charged Oliea in a two-count Indictment (Case No. 07-cv-30033, d/e 1) with possession with intent to distribute a substance containing five or more grams of cocaine base ("crack") in violation of 21U.S.C. § 841(a)(1) & (b)(1)(B) on September 29, 2006 (Count 1) and January 19, 2007 (Count 2).

On June 7, 2007, the Government filed a Notice of Prior Convictions pursuant to 18 U.S.C. § 851 (Case No. 07-cr-30033, d/e 9). The Notice of Prior Convictions stated that Oliea had two prior felony convictions in Illinois for manufacture/delivery of controlled substances. He received a 5-year sentence for the first conviction and a 4-year sentence for the second.

That same day, June 7, 2007, Oliea then pleaded guilty to both counts of the Indictment. Case No. 07-cr-30033, Minute Entry, dated June 7, 2007. In light of the Notice of Prior Convictions, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 851, Oliea faced a statutory imprisonment range of ten years to life imprisonment for each of the two counts of the Indictment to which he pleaded guilty.

Oliea's two prior convictions for manufacture/delivery of a controlled substance both involved distribution of cocaine. In the first case, Oliea sold approximately 1.5 grams of crack cocaine to an undercover police officer. PSR, at 10-11 ¶ 34; Response to Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (d/e 3) (Response), Appendix at App. 45, Criminal Complaint, Illinois v. Oliea, Sangamon County, Illinois, Circuit Court Case No. 2002 CF 967. In the second case, Oliea delivered less than a gram of a substance containing cocaine to a police officer. PSR, at 12 ¶ 39;

Response, Appendix at App. 50-51, Indictment, Illinois v. Oliea, Sangamon County, Illinois, Circuit Court Case No. 2002 CF 967.

The matter proceeded to sentencing on October 29, 2007. Case No. 07-cr-30033, Minute Entry, dated October 29, 2007. The U.S. Probation Office prepared a Presentence Investigation Report (Case No. 07-cr-30033, d/e 17) (PSR), dated September 2, 2007. The PSR recommended that Oliea be held accountable for 845.20 grams of cocaine base ("crack"), which resulted in a base offense level of 36 under the Sentencing Guidelines (U.S.S.G. or Guidelines). PSR, at 5 ¶ 10. The PSR found that Oliea was considered a Career Offender, pursuant to U.S.S.G. § 4B1.1(a), based on two prior felony convictions for manufacture/delivery of a controlled substance. The PSR stated that each of the two prior convictions was a "controlled substance offense" as defined in U.S.S.G. § 4B1.2. PSR, at 7 ¶ 26. Therefore, his applicable offense level was increased to 37 under U.S.S.G. § 4B1.1(b)(A) because the statutory maximum for his offenses of conviction was life imprisonment. Id. The report recommended a three-level reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1.

The PSR assigned Oliea 26 Criminal History points, resulting in a Criminal History Category of VI. A total offense level of 34 and a Criminal

History Category of VI resulted in a Guideline range of 262 to 327 months imprisonment. PSR, at 22 ¶ 88. There were no objections to the PSR, and the Court adopted its findings. The Court sentenced Oliea to 262 months imprisonment on each count with the sentences to run concurrently. Case No. 07-cr-30033, Minute Entry, dated October 29, 2007.

After Oliea's conviction and sentencing, the United States Sentencing Commission amended the Guidelines to reduce the sentencing ranges in cases in which offense levels were based on quantities of crack cocaine for which the defendants were accountable. The amendment applied retroactively to prisoners such as Oliea. U.S.S.G. Supplement to Appendix C, Amendment 706, effective November 1, 2007; see 28 U.S.C. §§ 994(o) and 994(u).

On September 8, 2008, the Court appointed the Federal Public Defender's Office to represent Oliea in connection with his request for retroactive application of the revised sentencing Guidelines for crack cocaine convictions. Text Order entered September 8, 2008 (Case No. 07-cr-30033). On October 15, 2008, the Court allowed the Federal Defender's Office to withdraw as counsel for Oliea because Oliea was not entitled to the retroactive application of the revised crack cocaine Guidelines. The revised Guidelines did not apply because his Guidelines offense level was

based on his status as a Career Offender, not on the quantity of crack cocaine for which he was held responsible. The revised cocaine Guidelines, therefore, would not affect his sentence. Opinion entered October 15, 2008 (Case No. 07-cr-30033 d/e 21).

On November 3, 2008, Oliea filed in this Court a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (Case No. 08-cv-3249) (§ 2255 Motion). On April 10, 2010, this Court denied the § 2255 Motion. Oliea v. United States, Opinion entered April 7, 2010 (Case No. 08-cv-3249 d/e 9) (included in Response, Appendix, at App. 31-39).

In 2010, Congress amended 21 U.S.C. § 841(b)(1) to reduce the disparity between sentences involving crack and powder cocaine. Congress increased the quantities of crack cocaine for which the defendant was responsible necessary to result in mandatory minimum prison sentences. Pub. L. No. 111-220, 124 Stat. 2372; see also 21 U.S.C. § 841(b)(1); United States v. Bell, 624 F.3d 803, 814 (7th Cir. 2010). The Sentencing Commission again retroactively amended the sentencing range for sentences based on quantities of crack cocaine. U.S.S.G. Supplement to Appendix C, Amendment 750, effective November 1, 2011. Oliea filed a motion to reduce his sentence. The Court denied the Motion because

Oliea's sentence was based on his status as a Career Offender, not the quantity of drugs on which he was convicted. Opinion entered November 1, 2012 (Case No. 07-cr-30003, d/e 30), at 8.

Oliea now brings this action for a writ of habeas corpus under 28 U.S.C. § 2241. Oliea argues that, in light of the Supreme Court decisions in Descamps v. United States, 570 U.S. 254 (2013), and Mathis v. United States, ___ U.S. ___, 136 S.Ct. 2243 (2016), the Court incorrectly interpreted the Career Offender Guidelines. Oliea argues that under Descamps and Mathis, neither of his two prior Illinois felony convictions for manufacture/delivery of a controlled substance was a "controlled substance offense" under U.S.S.G. § 4B1.1, as that term is defined in § 4B1.2 of the Guidelines. Oliea argues that he, therefore, was not a Career Offender. He argues that the erroneous finding that he was a Career Offender denied him the opportunity to reduce his sentence when the Sentencing Commission amended the Guidelines on crack cocaine. He argues that he is entitled to a relief under § 2241.

## ANALYSIS

Ordinarily, a federal prisoner, such as Oliea, must seek relief either through direct appeal or a motion under 28 U.S.C. § 2255. A prisoner, however, may proceed under a § 2241 petition for a writ of habeas corpus

if a motion under § 2255 is inadequate or ineffective to test the legality of his detention. 28 U.S.C. § 2255(e). Pursuant to § 2255(e), Oliea may proceed under § 2241 if: (1) he seeks relief because the Supreme Court has announced a new interpretation of a statute rather than the Constitution; (2) the new interpretation applies retroactively on collateral review and the petitioner could not have invoked the new interpretation in a prior proceeding; and (3) the error is grave enough to constitute a miscarriage of justice. Montana v. Cross, 829 F.3d 775, 783 (7th Cir. 2016).

Oliea's Petition meets one of these requirements. The Descamps and Mathis decision involved statutory interpretation, not constitutional law. These cases interpreted the Armed Career Criminal Act, 18 U.S.C. § 1924(e) (ACCA). The ACCA and the Career Offender provisions of the Guidelines provide for increased sentences for certain crimes if the defendant has prior felony convictions for either crimes of violence or controlled substance offenses. 18 U.S.C. § 924(e); U.S.S.G. § 4B1.1.[1] The ACCA uses the terms "violent felony" and "serous drug offense" to describe the type of felonies that qualify for the increased sentences. The Career Offender provisions of the Guidelines use the terms "crime of violence" and

---

[1] The ACCA applies if the offender is convicted of certain gun crimes and has three prior applicable convictions. 18 U.S.C. § 924(e). The Career Offender provision applies if the offender is convicted of a crime of violence or a controlled substance offense and has two prior applicable convictions. U.S.S.G. § 4B1.1.

"controlled substance offense" to described the applicable felony convictions. Although the ACCA and the Guidelines use different terms, the applicable definitions are the same in the ACCA and the Guidelines, and the terms are interchangeable. See Narvaez v. United States, 674 F.3d 621, 624 (7th Cir. 2011); 18 U.S.C. §§ 924(e)(2)(A)&(B); U.S.S.G. § 4B1.2(a) & (b). The Descamps and Mathis opinions, therefore, are decisions based on statutory interpretation and apply to interpretation and applications of the Career Offender provisions of the Guidelines. Narvaez, 674 F.3d at 624.

The Court issued Descamps and Mathis opinions in 2013 and 2016, long after Oliea's sentencing. The Seventh Circuit has also held that Supreme Court interpretations of the ACCA that "narrowed substantially" a defendant's "exposure to a sentence of imprisonment" apply retroactively. Narvaez, 674 F.3d at 626.[2] Oliea argues that the Mathis and Descamps decisions are similar and should be applied retroactively.

The Court does not decide the question of retroactivity of the Mathis and Descamps decisions because Oliea fails to establish the required third requirement for relief under § 2241. Oliea has not suffered a miscarriage of

---

[2] The Narvaez opinion addressed the retroactive application of the Supreme Court's decision in Chambers v. United States, 555 U.S. 122 (2009) (abrogated by Johnson v. United States, __ U.S.__, 135 S.Ct. 2551 (2015)).

justice.  The Court's decision to sentence Oliea as a Career Offender was correct under the Descamps and Mathis decisions.

The Descamps and Mathis decisions addressed when a state felony conviction constituted a "violent felony" under the ACCA.  The ACCA defines violent felony as follows:

> **(B)** the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> **(ii)** is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924(e)(2)(B) (emphasis in the original).   In Descamps, the defendant had three prior state convictions for burglary, robbery, and felony harassment.  The robbery and felony harassment offenses were violent felonies under § 924(e)(2)(B)(i).  The issue was whether the state burglary conviction qualified as a "burglary" as the word is used in § 924(e)(2)(B)(ii).

The Descamps Court explained that the federal courts generally apply a "categorical approach" to determining whether state crimes fit within § 924(e)(2)(B)(ii):

> They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime—i.e., the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.

<u>Descamps</u>, 570 U.S. at 257.

Federal courts apply the categorical to indivisible state criminal statutes. The federal courts apply a "modified categorical approach" if the state criminal statute is divisible:

> [A divisible] statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

<u>Descamps</u>, 570 U.S. at 257. If the state statute is indivisible, Courts may not look to documents from the state conviction, such as charging documents and jury instructions, to determine whether a conviction is a prior felony conviction under the ACCA. The Court may only compare the elements to the commonly understood elements of the generic crime. <u>Descamps</u>, 570 U.S. at 258. "The prior conviction qualifies as an ACCA

predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." Id. at 257.  If the statute's elements are broader than the generic offenses of burglary, arson, or extortion, then a person could violate the statute, but not commit the generic offense.  Because this possibility exists, the violation of the state statute in question would not be a violent felony under the ACCA.

In Descamps, for example, the defendant had been convicted of burglary under the California Penal Code § 459.  The elements of the generic offense of burglary was unlawful or unprivileged entry into, or remaining in, a building or structure, with the intent to commit a crime. Descamps, 570 U.S. at 260 (quoting Taylor v. United States, 495 U.S. 575, 599 (2013).  A person could violate the California Penal Code § 459 by entering a retail business lawfully with the intent to commit a crime such as shoplifting.  Descamps, 570 U.S. at 264-65.  The generic offense of burglary would not cover shoplifting.  Under the categorical approach, the Court did not consider the facts of the actual case, only the elements under the statute. The elements of California Penal Code §459 were broader than the elements of generic burglary.  The defendant's prior burglary conviction was not a prior conviction under ACCA § 924(e)(2)(B)(ii).  Descamps, 570 U.S. at 265.

If the statute was divisible, however, the statute describes the elements of more than one crime. In that situation, the federal court may consider charging documents, jury instructions, and certain other documents to establish whether the crime actually committed was a predicate offense under the ACCA. Descamps, 570 U.S. at 257.

The Supreme Court in Mathis addressed how to determine whether a criminal statute was divisible or indivisible. Like Descamps, the Mathis case concerned whether a prior state burglary conviction was a violent felony under ACCA § 924(e)(2)(B)(ii). The Supreme Court in Mathis held that if the state statute listed different elements of different crimes in the same statutory provision, then the statute was divisible; but, if the statute listed different means to commit a single crime in the same statutory provision, then statute was indivisible. Mathis, 136 S.Ct. at 2250.

The Mathis opinion instructed federal courts to look primarily at the state's interpretation of its own statutes to determine if a particular statutory provision lists different elements of different crimes (and so is divisible) or different means to commit the same crime (and so is indivisible). A state Supreme Court opinion or the state statute itself may state whether a particular state criminal statute established one crime with multiple means

to commit that one crime (indivisible), or listed several crimes and the elements to commit each crime (divisible). Mathis, 136 S.Ct. at 2256.

Oliea's prior convictions were both for manufacture/delivery of a controlled substance in violation of 720 ILCS 570/401. Section 570/401 states, in relevant part:

> § 401. Manufacture or delivery, or possession with intent to manufacture or deliver, a controlled substance, a counterfeit substance, or controlled substance analog. Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance other than methamphetamine and other than bath salts as defined in the Bath Salts Prohibition Act sold or offered for sale in a retail mercantile establishment as defined in Section 16-0.1 of the Criminal Code of 2012, a counterfeit substance, or a controlled substance analog. A violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act. For purposes of this Section, "controlled substance analog" or "analog" means a substance, other than a controlled substance, which is not approved by the United States Food and Drug Administration or, if approved, is not dispensed or possessed in accordance with State or federal law, and that has a chemical structure substantially similar to that of a controlled substance in Schedule I or II, or that was specifically designed to produce an effect substantially similar to that of a controlled substance in Schedule I or II. Examples of chemical classes in which controlled substance analogs are found include, but are not limited to, the following: phenethylamines, N-substituted piperidines, morphinans, ecgonines, quinazolinones, substituted indoles, and arylcycloalkylamines. For purposes of this Act, a controlled substance analog shall be treated in the same manner as the controlled substance to which it is substantially similar.

720 ILCS § 570/401.  Illinois' interpretation of § 570/401 clearly establishes that the provision is divisible.

The Illinois Supreme Court determined that an earlier version of § 570/401 was indivisible.  People v. Manning, 71 Ill.2d 132, 374 N.E.2d 200 (Ill. 1978).  In Manning, the defendant was convicted on two counts of possession of a controlled substance in violation of 720 ILCS 570/402.[3]  The defendant possessed both amphetamines and barbituric acid.  The Illinois Supreme Court held the defendant in that case could not be convicted of two crimes.  He committed the single offense of possession of a controlled substance by two means, distribution of heroin and distribution of cocaine.  Id. 374 N.E.2d at 767.  The Manning opinion established that the earlier version of § 570/401 established one offense that could be committed by differing means.  The earlier version of § 570/401 was indivisible.

In 1995, the Illinois General Assembly amended § 570/401 and 570/402 by adding the following sentence to each provision, "A violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act."  Ill. Pub. Act. 89-104, eff. August 20, 1995).  Thereafter, the manufacture/delivery of a particular

---

[3] In 1978, § 402 was codified at IL Rev. Stat. ch. 56 ½ ¶ 1402.

controlled substance was a separate offense with separate elements. For example, a person who distributed heroin and cocaine in a single transaction could be convicted of two separate offenses, one for distributing heroin and one for distributing cocaine. See People v. Clemons, 275 Ill.App.3d 1117, 1118-19, 657 N.E.2d 388, 389 (Ill.App. 1st Dist. 1995). The elements for the cocaine offense were separate and distinct from the elements of the heroin offense. Effective August 20, 1995, § 570/401 was divisible.

Oliea committed his prior state offenses in 2004 and 2005, long after the 1995 amendments made § 570/401 divisible. Oliea's sentencing Court, therefore, could properly look at the charging documents to see if the particular offenses to which Oliea pleaded guilty in those two cases were controlled substance offenses under the Guidelines.

Oliea's sentencing Court properly determined that Oliea's two manufacture/delivery convictions were prior controlled substance offenses under U.S.S.G. § 4B1.1. The U.S.S.G. Career Offender provisions defines "controlled substance offense" as follows:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a

controlled substance (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). The definition includes distribution of a controlled substance. Cocaine is a controlled substance. U.S.S.G. § 2D1.1(c); 21 U.S.C. § 802(6), 812, Schedule II (a)(4). Oliea's sentencing Court properly determined that Oliea was a Career Offender because he had two prior controlled substance convictions.

Oliea argues that § 570/401 is indivisible and broader than the Guidelines definition of "controlled substance offense" because § 570/401 includes analogs to controlled substances, but U.S.S.G. § 4B1.2 does not mention analogs.[4] This argument fails because §570/401 is divisible for the reasons discussed above. Therefore, a cocaine offense under §570/401 is a separate divisible offense from a cocaine analog offense. The sentencing Court properly look to the charging documents and see that Oliea distributed cocaine. The Court properly determined that those convictions made him a Career Offender under the Guidelines.

Oliea also argues that his prior convictions were not "controlled substances offenses" under the Guidelines because the delivery elements

---

[4] The Court does not decide whether analogs of controlled substances are included in the term controlled substances in § 4B1.2. Generally, the term "controlled substance" includes analogues. 821 U.S.C. § 813; U.S.S.G. § 2D1.1 Application Note 5, Analogues and Controlled Substances Not Referenced in this Guideline.

in § 570/401 were broader than the comparable elements in the Guideline definition of "controlled substances offenses." Oliea relies on the decision in United States v. Hinkle, 832 F.3d 569 (5th Cir. 2016), to support his position. The Hinkle case involved prior convictions under the Texas controlled substance statute. The Texas statute defined the term "deliver" to mean:

> to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.

Hinkle, 832 F.3d at 572. The Hinkle Court found that the Texas statute was indivisible. The Hinkle Court determined that the term "offering to sell" included in the definition was a means of committing the violation of the Texas statute that was not included in the Guidelines definition of controlled substance offense. The Hinkle Court, therefore, concluded that the defendant in that case was not a Career Offender. Hinkle, 832 F.3d at 572-76. Oliea argues under Hinkle that his prior convictions were not controlled substance offenses under the Guidelines.

The Hinkle decision is distinguishable for a number of reasons. Section 570/401 is divisible for the reasons set forth above; the Texas statute at issue in Hinkle was not. The sentencing Court, therefore,

properly looked at the charging documents to determine that Oliea distributed cocaine; he did not just offer to sell cocaine.

In addition, the Illinois statutory definition of "deliver" or "delivery" does not include the term "offer to sell." The terms "deliver" or "delivery" in § 570/401 are defined as follows:

> (h) "Deliver" or "delivery" means the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship.

720 ILCS 570/102(h). The terms "deliver" and "delivery" have the identical definition under federal law. 21 U.S.C. § 802(8). The term "distribute" under federal law means, "to deliver a controlled substance." 21 U.S.C. § 802(11).[5] The Guidelines Career Offender definition of "controlled substance" offense includes "distribution" of a controlled substance. U.S.S.G. § 4B1.2(b). Therefore, unlike the Texas statute at issue in Hinkle, the terms "deliver" and "delivery" in § 570/401 have the same meaning as "distribution" in the Guidelines definition of "controlled substance offense." The Illinois statutory definition of delivery is not broader. The Hinkle opinion does not apply even if § 570/401 was indivisible.

---

[5] The definition includes some exceptions for certain types of delivery not relevant here. 21 U.S.C. § 802(11).

Oliea last argues that the Government improperly filed the § 851 Notice of Prior Convictions because his prior convictions were not convictions that would trigger the notice. Oliea essentially argues that the <u>Mathis</u> decision interpreting the ACCA also applies to § 851. Oliea is incorrect. The Controlled Substances Act imposes increased mandatory sentencing ranges if a defendant had already been convicted one or more "felony drug offenses" at the time of the offense of conviction. <u>See</u> 21 U.S.C. § 841(b). Section 851 requires the Government to file a notice of the prior conviction or convictions before a defendant is subject to an increased sentencing range. 21 U.S.C. § 851. A "felony drug offense" is defined as follows:

> The term "felony drug offense" means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

21 U.S.C. § 802(44). The definition of felony drug offense is much broader than the offenses described in 470 ILCS 570/401. Oliea's prior convictions clearly related to narcotic drugs. Cocaine is a narcotic drug. 21 U.S.C. § 802(17)(D). The Government properly filed the Notice of Prior Convictions.

There was no miscarriage of justice. Oliea is not entitled to relief under § 2241. The Petition should be dismissed.

THEREFORE, THIS COURT RECOMMENDS that Petitioner Mario Oliea's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (d/e 1) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER:   April 3, 2018

          *s/ Tom Schanzle-Haskins*
          TOM SCHANZLE-HASKINS
          UNITED STATES MAGISTRATE JUDGE